IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**JOSEPH LEON HERRON, JR.,**                                       **PLAINTIFF,**

**VS.**                                 **CIVIL ACTION NO. 2:06CV114-P-A**

**BAPTIST MEMORIAL HEALTHCARE
CORPORATION; BAPTIST MEMORIAL
HOSPITAL – DESOTO; AND ALBERT
SEWELL, In His Individual Capacity,**                     **DEFENDANTS.**

## ORDER

These matters come before the court upon Defendant Baptist Memorial Healthcare Corporation, Defendant Baptist Memorial Hospital – DeSoto, and Defendant Albert Sewell's motions for summary judgment [63, 65, 68, respectively]; Defendants' motion *in limine* [67], and Plaintiff's motion to strike Declarations of Samuel Simmons and Peggy Jackson [77]. After due consideration of the motions and the responses filed thereto, the court finds as follows, to-wit:

**A. Motions for Summary Judgment**

**1. Plaintiff's FMLA Retaliation Claim**

The plaintiff asserts an FMLA retaliation claim against both hospital defendants, arguing that one or both of them is liable for his discharge on October 24, 2005 because the decision to discharge was made in whole or in part in retaliation for the thirty-nine days of FMLA leave he took between December 9, 2004 to January 17, 2005 and the ten days he took between July 22 and August 1, 2005.

The court concludes that after construing the facts in a light most favorable to the plaintiff,

1

there is a genuine issue of material fact with regard to whether or not Walter Banks indicated to the plaintiff that he was terminated because he abused his medical leave. Though Banks denies making this statement, the plaintiff clearly alleges that he did. This is a classic question of credibility which falls to the jury, not to the court. If the jury determines that Banks did in fact make this statement, then the statement would constitute direct evidence of FMLA retaliation in addition to indirect evidence in support of the plaintiff's pretext argument.

The subsidiary issue is whether or not Baptist Memorial Healthcare Corporation (BMHCC) can be said to be liable in addition to Baptist Memorial Hospital – DeSoto (BMH-DeSoto) for FMLA retaliation. BMHCC argues that it is a separate entity from BMH-DeSoto and that it was never the plaintiff's employer.

However, the plaintiff has demonstrated a genuine issue of material fact regarding whether BMHCC exercised sufficient control over the discharge at issue such that BMHCC can be said to meet the "joint employer" test of 29 C.F.R. § 825.104 and/or the "integrated employer" test of 29 C.F.R. § 825.106.

Pursuant to 29 C.F.R. 825.104(c):

(1) Where one corporation has an ownership interest in another corporation, it is a separate employer unless it meets the "joint employment" test discussed in § 825.106, or the "integrated employer" test contained in paragraph (c)(2) of this section.

(2) Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:

2

(i) Common management;

(ii) Interrelation between operations;

(iii) Centralized control of labor relations; and

(iv) Degree of common ownership/financial control.

With regard to the "joint employment" test, 29 C.F.R. § 825.106 provides in pertinent part:

> (a) Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers and facilities. **Where the employee performs work which simultaneously benefits two or more employers**, or works for two or more employers at different times during the workweek, **a joint employment relationship generally will be considered to exist in situations such as**:
>
> \*\*\*
>
> (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
>
> (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.
>
> \*\*\*

29 C.F.R. § 825.106(a) (emphasis added).

For example, on October 13, 2005 two co-employees of the plaintiff allege they saw the plaintiff sleeping while on duty and while not on a legitimate break. These two employees informed Defendant Sewell, who is the plaintiff's immediate supervisor, who then informed his boss, Walter Grace, who was the Interim Director of Facilities Services for BMH-DeSoto. Because the HR director of BMH-DeSoto, Walter Banks, was out of town for three days during this time, Grace admits that he consulted David Rhea, the HR director at BMHCC about the company policy regarding catching an employee sleeping on the job. Furthermore, BMHCC admits that Banks, the

3

HR director for BMH-DeSoto "may contact corporate HR [that is, BMHCC's Human Resources department] for clarification purposes." Defendant BMHCC's Brief at 3. These facts combined with the other arguments set out in the plaintiff's response brief are sufficient to create a jury question.

**2. Plaintiff's Claim for Wrongful Discharge for Reporting Illegal Activity**

The plaintiff also asserts a claim for wrongful discharge in violation of Mississippi public policy against all defendants, arguing that he was discharged in retaliation for reporting illegal activity. More specifically, the plaintiff alleges that Defendant Sewell, plaintiff's immediate supervisor, directed him to falsely tag medical equipment to indicate that it had been inspected and approved even though it had not been inspected in preparation for an upcoming accreditation inspection. The plaintiff alleges that he protested to Sewell about this direction and that the plaintiff reported the activity to Matt Ferrell, the foreman of a different department that was also under Facilities Service in addition to the plaintiff's department.

The hospital defendants argue that the plaintiff cannot succeed on this claim as a matter of law since, even if it did happen, such an action would not result in criminal penalties and because the plaintiff never reported the alleged activity to anyone with the authority to discharge him. Defendant Sewell argues the he cannot be held individually liable because he had no part in the plaintiff's discharge.

The Mississippi Supreme Court in *McArn v. Allied Bruce-Terminix Co.*, 626 So.2d 603, 607 (Miss. 1993) held:

> We are of the opinion that there should be in at least two circumstances, a narrow public policy exception to the employment at will doctrine and this should be so whether there is a written contract or not: (1) an employee who refuses to participate in an illegal act ... shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee

4

> who is discharged for reporting illegal acts of his employer to the employer **or anyone else** is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

*Id.* (emphasis added).

Furthermore, "[a]pplicability of the exception does not require that a crime has already been committed ... but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Hammons v. Fleetwood Homes*, 907 So.2d 357, 360 (Miss. Ct. App. 2004).

The plaintiff argues that the alleged activity constituted the crime of false pretenses. Miss. Code Ann. § 97-19-39(1) provides:

> Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of less than Five Hundred Dollars ($500.00), upon conviction thereof, shall be guilty of a misdemeanor and punished by imprisonment in the county jail not exceeding six (6) months, and by fine not exceeding One Thousand Dollars ($1,000. 00).

"[T]he crime of false pretenses occurs when one makes a false representation of a past or existing fact with the intent to deceive and with the result that the accused obtains something of value from the party deceived." *State v. Rivenbark*, 509 So.2d 1047, 1048 (Miss. 1987).

Despite the defendants' arguments to the contrary, it is reasonable to assume that the alleged behavior, if in fact it occurred, would constitute the crime of false pretenses pursuant to § 97-19-39(1). The plaintiff is correct that if documents were falsified to represent that medical equipment had been inspected and had passed inspection in order to pass an accreditation inspection, then the defendants would be receiving a valuable benefit from the falsification in the form of having their

accreditation renewed. No one would seriously argue that accreditation is not something of significant value to a hospital. Furthermore, it is irrelevant whether or not the Joint Commission, formerly known as the Joint Commission on Accreditation of Healthcare Organizations, would seek criminal penalties in the event they discovered the alleged falsification of inspection documents.

However, the hospital defendants also argue that for the plaintiff to have an actionable claim of wrongful discharge, there must be evidence that he reported the alleged illegal activity to someone with the authority to discharge the plaintiff, citing *Hust v. Forrest General Hosp.*, 762 So.2d 298 (Miss. 2000). The Court in *Hust* concluded:

> Hust claims that he was actually fired because of his knowledge and complaints concerning illegal activity in the construction bidding process and appropriation of federal funds at Forrest General. ... Hust has failed to create a genuine issue of material fact as to whether he was wrongfully discharged in violation of the public policy exception. The record reveals that Hust never reported any illegal activity to anyone in authority at Forrest General. **And although the record shows that Hust voiced concerns to a co-employee, there is no evidence that the co-employee ever reported Hust's concerns to anyone in a position to discharge or cause the discharge of Hust. Moreover, the uncontroverted affidavit of Lowery Woodall, the individual who made the ultimate decision to terminate Hust, states that Hust never reported to him any allegations that the hospital was involved in any improper bidding procedures**. Viewing all of the evidence in the light most favorable to Hust, the facts of this case do not support a claim for wrongful termination.

*Id.* at 301-02 (emphasis added).

The plaintiff argues that he did in fact report the activity to Matt Ferrell, who is the foreman of Plant Operations, which, although a separate department from the Bio-Med department, is a department also under Walter Grace as the Interim Director of Facilities Services. However, it is undisputed that Ferrell did not have the authority to discharge the plaintiff, nor did Sewell have such authority. Furthermore, the plaintiff offers no evidence that he or anyone else ever reported the

activity to anyone who was involved in the decision to terminate the plaintiff, *i.e.*, Grace and/or Banks and Rhea.

Therefore, the court concludes that summary judgment should be granted on the plaintiff's wrongful discharge in violation of public policy claim pursuant to the holding in *Hust*.

**3. Plaintiff's Tortious Interference with Employment Relations Claim Against Defendant Sewell**

The plaintiff claims that his supervisor, Albert Sewell, tortiously interfered with his employment with the hospital by reporting that the plaintiff was allegedly sleeping on the job in bad faith because Sewell and the plaintiff had had a less than amiable employment history with one another.

"When a person causes another to breach a contract with some third person, the tort is one of interference with performance of a contract. The four elements for this tort are: '(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, **without right or justifiable cause** on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.'" *Par Industries, Inc. v. Target Container Co.*, 708 So.2d 44, 48 (Miss. 1998) (emphasis added).

However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Shaw v. Burchfield*, 481 So.2d 247, 255 (Miss. 1985).

It is undisputed that Sewell was the plaintiff's supervisor. It is also undisputed that two

7

witnesses reported to Sewell that the plaintiff was allegedly sleeping while not on a lunch break. Even if he were not sleeping, as the plaintiff avers, it is undisputed that he was lying on his back on a bed while not on break and without permission. In any event, after the two witnesses reported the alleged sleeping to Sewell, he avers that he saw the plaintiff sleeping himself. Thereafter, Sewell reported what he saw to his boss, Walter Grace, who then decided to suspend the plaintiff on that same day pursuant to company policy that a person can be immediately terminated for sleeping while on duty.

Therefore, the plaintiff cannot establish the third element of the claim for tortious interference with employment relations given that Sewell had a right and justifiable cause to report what he believed was an infraction by the plaintiff to Sewell's superior. Such a report obviously falls within the scope of Sewell's employment as a supervisor of the plaintiff.

**B. Defendants' Motion in Limine**

The hospital defendants have moved for exclusion of the plaintiff's Declaration regarding an alleged conversation he had with fellow non-managerial employees during which one or more co-employees allegedly indicated that management wanted to get rid of the plaintiff for abusing his medical leave. These defendants argue that such testimony is clearly inadmissible hearsay. In response, the plaintiff wrote: "Plaintiff does not rely on the disputed testimony and, therefore, concedes the motion." Therefore, the hospital's motion *in limine* should be granted.

**C. Plaintiff's Motion to Strike**

The plaintiff moves to strike the Declarations of Samuel Simmons and Peggy Jackson that the defendants filed in support of their motions for summary judgment, arguing that neither of them

were identified during discovery and the plaintiff therefore had no opportunity to depose them. Having considered the matter, court concludes that it cannot be said that the plaintiff had no knowledge of Sammy Simmons role in the lawsuit as one of the witnesses alleging that he saw the plaintiff sleeping while on duty. Therefore, the motion to strike should be denied on the merits with regard to Sammy Simmons. The motion should be denied as moot regarding Peggy Jackson because the court has dismissed with prejudice the plaintiff's claim for wrongful discharge for reporting illegal activity.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Defendant Baptist Memorial Healthcare Corporation and Defendant Baptist Memorial Hospital – DeSoto's motions for summary judgment [63, 65] are **GRANTED IN PART AND DENIED IN PART**; specifically,

(2) The motions [63,65] are granted insofar as the plaintiff's claim against Defendant Baptist Memorial Healthcare Corporation and Defendant Baptist Memorial Hospital – DeSoto for wrongful discharge in violation of Mississippi public policy is **DISMISSED WITH PREJUDICE**;

(3) The motions [63,65] are denied regarding the plaintiff's claim against Defendant Baptist Memorial Healthcare Corporation and Defendant Baptist Memorial Hospital – DeSoto for FMLA retaliation;

(4) Defendant Albert Sewell's motion for summary judgment [68] is **GRANTED**; therefore,

(5) The plaintiff's claims against Albert Sewell for wrongful discharge in violation of Mississippi public policy and tortious interference with employment relations are **DISMISSED WITH PREJUDICE**;

(6) Defendants' motion *in limine* [67] is **GRANTED**; and

(7) Plaintiff's Motion to Strike [77] is **DENIED**.

**SO ORDERED** this the 4th day of September, A.D., 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE